*In re* MARRIAGE OF CAROL A. MARQUARDT, a/k/a Carol A. Warhanik, Petitioner-Appellee, and EARL THOMAS MARQUARDT, Respondent-Appellant.

Second District   No. 82—91

Opinion filed November 8, 1982.

Eugene L. Bennett, of Chicago, for appellant.

Lan McMillan, of Chicago, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The marriage of Carol A. Marquardt to Earl Thomas Marquardt was dissolved on May 30, 1979. On July 25, 1981, the wife remarried and the husband petitioned for termination of certain obligations provided in the settlement agreement incorporated in the decree. After a hearing in which no evidence was offered or adduced, the trial court found that the agreement amounted to a property settlement rather than a provision for maintenance and granted the wife's motion for summary judgment, thereafter denying the husband's motion for reconsideration. The husband appeals.

Portions of the decree particularly in question state:

"ARTICLE VIII

LUMP SUM SETTLEMENT IN LIEU OF MAINTENANCE FOR WIFE AND WAIVER OF MAINTENANCE OF HUSBAND

1. Husband agrees to pay wife, and wife agrees to accept as and for a lump sum settlement in lieu of maintenance or other marital rights not specifically included herein, the sum of one hundred and thirty thousand ($130,000) dollars to be paid in weekly installments of five hundred ($500.00) dollars; provided, however, that the husband shall be released from the obligation of payment as to any installment falling due subsequent to the death of the wife.

2. The foregoing payment, when made by the husband to the wife, shall be in full and complete settlement of all claims or rights held or asserted by the wife against the husband for maintenance, and she shall be forever barred from asserting such claims.

3. Husband hereby waives any and all claims for maintenance, past, present and future; and husband shall have no further claims against wife for maintenance, and he is forever barred from asserting said claims.

4. All payments made by the husband to the wife as provided

in ARTICLE VIII will be in discharge of a legal obligation imposed by the husband under a written instrument incident to divorce, all within the meaning and intent of Section 71(a) and Section 215 of the Internal Revenue Code as amended and now in effect, and of similar provisions of future laws, and that such payments will be includable in the wife's gross income pursuant to Section 71(a) and will be deducted by the husband pursuant to Section 215 to determine their respective taxable incomes.

5. The parties acknowledge their awareness of the provisions of Illinois Revised Statutes Chapter 40 Section 510(b) which provisions terminate the obligation of a party to pay maintenance upon the death of either party or the remarriage of the recipient of maintenance payments and the parties hereby declare their intention not to be bound by such provisions; it being the intent of the parties that the obligation of the husband hereunder shall terminate only upon death of the wife and that this Separation Agreement and the rights, duties and obligations of the parties granted and assumed hereunder shall exist independent of any decree of dissolution of marriage or separate maintenance and said rights, duties and obligations shall not be reduced, eliminated or modified by the court in any way except insofar as the court shall specifically find the provisions of this Separation Agreement to be unconscionable or shall specifically modify the provisions hereof pertaining to child support, custody or visitation."

"ARTICLE XIII

WIFE'S EDUCATION

Husband will pay for the cost of the wife obtaining seven (7) full years of full time college education including, but not as a limitation, tuition, books and fees. The husband will pay for said college education while the wife is attending full time school upon presentation of bills or appropriate request by wife.

It is further agreed by the parties hereto that 'full time school' shall be defined as a minimum of twelve (12) college credits per quarter or semester."

In interpreting settlement agreements, ordinary rules of contract construction apply. (*In re Marriage of Kolb* (1981), 99 Ill. App. 3d 895, 899-900.) Whether the agreement or decree is ambiguous is a question of law to be determined by the trial court. (*In re Marriage of Kolb* (1981), 99 Ill. App. 3d 895, 900.) The parties' intentions must be de-

termined from the language of the instrument itself, unless the instrument is incomplete or the language is ambiguous, in which case extrinsic evidence may be introduced as an aid to interpretation. (*Sudler v. Sudler* (1972), 6 Ill. App. 3d 546, 548.) An agreement is ambiguous if it is susceptible of being interpreted in more than one sense, having characteristics of maintenance but also language commonly identified with a property settlement. *In re Marriage of Workman* (1980), 89 Ill. App. 3d 886, 889; *Sudler v. Sudler* (1972), 6 Ill. App. 3d 546, 548-49.

The dissolution decree and the further proceedings in this case having taken place after October 1, 1977, the effective date of the Illinois Marriage and Dissolution of Marriage Act, that act applied in construing the provisions in question. Definitions of property settlement or maintenance in cases decided under prior law remain, however, a valuable reference to the extent they are not in conflict with the new act. (See, *e.g., Ihle v. Ihle* (1981), 92 Ill. App. 3d 893, 896; *Potocki v. Potocki* (1981), 98 Ill. App. 3d 501, 504.) Thus, in defining maintenance (formerly periodic alimony) as distinguished from a property settlement this court has adopted prior law stating:

"Periodic alimony (maintenance) has been defined as follows:

'It is for an indefinite period of time and usually for an indefinite total sum. It is based upon the husband's income and the needs of the wife determined from the standpoint of the manner in which they have been accustomed to live. It is modifiable after decree when the wife's needs increase or decrease, or when the husband's ability to pay increases or decreases. This is so because it takes the form of periodic allowances which do not vest until they become due. It usually terminates upon the death of the husband, although by agreement payments may be made a charge upon the husband's estate after they become due. They are never a charge on a husband's estate in advance of the due date because they are not, prior to that time, vested. Payments of alimony from husband to wife are not based upon any consideration moving from wife to husband, but are based upon the common-law duty of the husband to support his wife. "Alimony" in this sense of the word, is modifiable.' *Walters v. Walters* (1950), 341 Ill. App. 561, 567-68, 94 N.E.2d 726, aff'd (1951), 409 Ill. 298, 99 N.E.2d 342. Also quoted in *Pacione v. Pacione* (1980), 81 Ill. App. 3d 600, 604-605, 402 N.E.2d 316, and *Warren v. Warren* (1980), 88 Ill. App. 3d 543, 546, 410 N.E.2d 915.

On the other hand, a property settlement has been defined as

a sum certain, often payable in installments, passing between the parties as consideration for their release of their marital rights. *Jacobson v. Jacobson* (1964), 50 Ill. App. 2d 244, 247-48, 200 N.E.2d 379." *In re Marriage of Lowe* (1981), 101 Ill. App. 3d 317, 319-20.

In ruling on the issues we apply these definitions so far as they are presently applicable.

### ARTICLE XIII—WIFE'S EDUCATION

The trial judge, finding article XIII unambiguous, reasoned that the payments were not maintenance because the provisions did not limit the time the wife had to exercise her right to a subsidized education, did not require the wife to obtain a degree, had no limitation as to maximum cost, and specified no terminating events other than the attainment of seven years of full-time college credit.

The husband argues that the educational payments required by article XIII are essentially rehabilitative maintenance and therefore terminate upon the wife's remarriage, pursuant to section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 510(b)). The wife argues that the payments are part of the property settlement under which the husband's obligation to pay does not end on her remarriage.

Both parties take the position that the language in the decree is unambiguous, as the trial judge also concluded. As previously noted, however, the husband contends that the provisions unambiguously amount to maintenance, the wife that they unambiguously amount to a property settlement.

The major difference between the former divorce act and the present Illinois Marriage and Dissolution of Marriage Act in this regard is that under the old act alimony was for an indefinite time while under the new act maintenance may be for a specific number of years. (Ill. Ann. Stat., ch. 40, par. 504(b), Historical and Practice Notes, at 527 (Smith-Hurd 1980).) Further, the new act adopts the concept of rehabilitative maintenance to assist the divorced person in regaining a constructive role in society by an award limited in amount and duration to what is necessary to maintain a person through training or education. See Ill. Ann. Stat., ch. 40, par. 504(b)(2), Historical and Practice Notes, at 529 (Smith-Hurd 1980).

Article XIII provides a subsidy for seven years for full-time education only, although it does not require a resulting degree. The payments are not for a sum certain, but will vary with the wife's educational needs and expenses though the dollar amounts of the payments

cannot be predicted precisely. In *Balasa v. Balasa* (1956), 11 Ill. App. 2d 103, the court held that payments of $150 per year for plastic eyes for the wife for an indefinite number of years were in the nature of maintenance rather than a property settlement. The court stressed that the payments were for an indefinite time and total and for a particularized expense and did not survive remarriage although the parties expressly stated otherwise.

That the wife may choose when to attend college leaves open the possibility that the payments will, at least in part, be coming out of the husband's future income rather than present marital property. Moreover, a separate part of the overall agreement (article X) is denominated as the "Property Settlement." (See *Pacione v. Pacione* (1980), 81 Ill. App. 3d 600.) Article XIII and the settlement agreement as a whole do provide other indications, however, that the payments were intended as a property settlement rather than maintenance. Article XIV provides that the husband's obligations survive his death to become a charge on his estate. This supports a finding that the payments are not maintenance (*Sudler v. Sudler* (1972), 6 Ill. App. 3d 546, 549); article VIII provides that the cash payments are "in full and complete settlement of all claims or rights held or asserted by the wife against the husband for maintenance" and constitute a "settlement in lieu of maintenance"; and the settlement agreement taken as a whole strongly suggests that the parties intended to make a final, permanent adjustment of their respective rights and obligations. This is a strong indication of an intent to prevent maintenance issues from playing any role in future proceedings. See *In re Support of Burks* (1981), 100 Ill. App. 3d 700, 704.

■ Article XIII considered in all of its terms cannot be said to be unambiguously a property settlement, or unambiguously maintenance, as a matter of law. While in many of its aspects it appears that rehabilitative maintenance was intended, in more aspects the language permits an inference that the parties recognized that the wife had contributed to the opportunity for the husband's medical education, resulting in a large productive asset for the husband, and that she was to receive an equivalent exchange in a property settlement for her education. In view of the ambiguities, however, the real intentions of the parties should be the subject of parol evidence and not decided as a matter of law.

### ARTICLE VIII—$130,000 IN INSTALLMENTS

The husband also argues that the weekly payments under article VIII, although labeled a lump sum settlement in lieu of maintenance,

must be characterized as maintenance under the terms of the provision.

The husband in the trial court originally requested termination of the payments upon the wife's remarriage. However, in his motion for reconsideration in that court, and in his proceeding in this court, he has abandoned the request for termination.

Here he argues that the payments must be unambiguously characterized as maintenance, but concedes that he is still obligated to continue the weekly installments of $500 until the $130,000 sum specified has been satisfied, despite the wife's remarriage. In taking this position he relies upon *In re Marriage of Mass* (1981), 102 Ill. App. 3d 984, 988, decided after the decision in the trial court but before the motion for reconsideration. In *Mass* it was held that the parties to a settlement agreement could provide that maintenance payments not terminate upon the dependent spouse's remarriage despite the termination provision of section 510(b).[1] Under prior law, the fact that the payments are for a sum certain ($130,000) to be paid over a specified time (five years) would have resulted in the characterization of the payments as in the nature of a property settlement. (*Walters v. Walters* (1950), 341 Ill. App. 561, 567-68, *aff'd* (1951), 409 Ill. 298; *In re Marriage of Lowe* (1981), 101 Ill. App. 3d 317, 319-20.) As previously noted, however, the new act allows maintenance for a limited time and sum, and the factors of definiteness in amount and time are not conclusive.

Additionally, the liability of the husband's estate for payments, the description of the settlement as "a settlement in lieu of maintenance," the waiver of any further claim for maintenance, and the release of all obligations to each other, support an inference that the parties intended a final and permanent property settlement.

Nevertheless paragraphs 4 and 5 introduce an ambiguity into the article. Subparagraph 4 describes the payments as being "in discharge of a legal obligation" of the husband, and as includible in the wife's gross income and deductible from the husband's gross income. This

---

[1]Section 510(b) has been amended by Public Act 82—194 to provide that the parties may agree to continue maintenance past remarriage. This amendment went into effect January 1, 1982 (see Ill. Rev. Stat. 1981, ch. 40, par. 510(b)), and therefore does not apply here. Under the prior law there had been conflicting decisions. See *In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657; *Warren v. Warren* (1980), 88 Ill. App. 3d 543, 547; *Ihle v. Ihle* (1981), 92 Ill. App. 3d 893, 897. See also *dicta* in *In re Marriage of Lowe* (1981), 101 Ill. App. 3d 317, 319, where our holding that the payments at issue were part of a property settlement precluded ruling on the issue directly.

indicates that the parties recognized and sought to obtain favorable tax treatment for maintenance payments, inasmuch as the husband may deduct payments only if these are made in recognition of a duty to support and he is legally obligated to pay under Illinois law. (26 U.S.C. secs. 71, 215 (1976); *In re Marriage of Mass* (1981), 102 Ill. App. 3d 984, 988.) Further, subparagraph 5 expresses the parties' intention to continue the payments despite the wife's remarriage or other terminating factors in section 510(b) of the Illinois Marriage and Dissolution of Marriage Act. This permits a reasonable inference that the parties intended the payments as maintenance.

■ Again, there are substantial indicia of both a property settlement and maintenance, and extrinsic evidence is required to resolve the apparent ambiguity.

The judgment of the circuit court of Du Page County is therefore reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.