*In re* MARRIAGE OF ROSEMARIE LEHR, Petitioner-Appellant and Cross-Appellee, and LOUIS A. LEHR, JR., Respondent-Appellee and Cross-Appellant.

First District (1st Division)   No. 1—89—2170

Opinion filed June 28, 1991.—Rehearing denied August 16, 1991.

Rinella & Rinella and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellant.

Grund, Marcus, McNish, Knabe & Nadler, of Chicago (Dorene Marcus and Linda J. Kroning, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Petitioner, Rosemarie Lehr, approximately 61 years old, appeals from an order entered by the trial court which reduced the amount of monthly unallocated alimony and child support (the monthly obligation) that respondent, Louis Lehr, an attorney, was obligated to pay pursuant to a marital settlement agreement entered into by the parties at the time of their divorce in 1977. Rosemarie also appeals from an order which required Louis to pay only $3,800 of her attorney fees. Rosemarie contends that: (1) the trial court erred in finding that the terms of the marital settlement agreement were ambiguous and in allowing extrinsic evidence to establish the intent of the parties regarding reduction of the monthly obligation; (2) the trial court abused its discretion in reducing Louis' monthly obligation; and (3) the trial court abused its discretion in awarding only partial attorney fees to Rosemarie. On cross-appeal, Louis claims that the trial court erred: (1) in denying his petition to terminate the monthly obligation; and (2) in not requiring Rosemarie to pay all of her own attorney fees and costs. For the following reasons, we reverse the judgment of the trial court and remand the cause for a hearing on the reasonableness of Rosemarie's attorney fees and the allocation of her fees between the parties.

The record indicates that judgment for the divorce of Rosemarie and Louis was entered on February 10, 1977.[1] A marital settlement agreement (the Settlement Agreement) between the parties was approved and incorporated into the judgment. Paragraph 3 of the Settlement Agreement provides as follows:

---

[1]The judgment of divorce was entered pursuant to "An Act to revise the law in relation to divorce" (Ill. Rev. Stat. 1975, ch. 40, par. 1 *et seq.*), which preceded the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) (the IMDMA), the effective date of which was October 1, 1977. However, pursuant to section 801(c) of the IMDMA, the provisions of the IMDMA apply to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date.

"3. *UNALLOCATED ALIMONY AND CHILD SUPPORT*

The husband covenants and agrees that he will pay to the wife, as and for unallocated alimony and child support, the sum of Three Thousand Two Hundred Fifty Dollars ($3,250.00) per month in equal semi-monthly installments of One Thousand Six Hundred Twenty-Five Dollars ($1,625.00) each, from which funds the wife shall provide for the support of the children except as is otherwise hereinafter provided, which said payments shall commence on the date of the entry of a judgment for divorce in this cause and shall continue on the first and fifteenth day of each month thereafter, as set forth under the so-called Lester Plan, until the death or re-marriage of the wife, whichever shall first occur. In the event of the remarriage of the wife, the parties will consult as to the amount to be paid thereafter as child support; and in the event that they shall be unable to come to an agreement with respect thereto, the matter shall be referred to the chancellor hearing the cause aforementioned, or to his successor in office, provided, however, that in the event that either of the children of the parties hereto shall hereafter attend a college or university outside the Chicago Metropolitan area, and shall not be living in the home of the wife, the amount payable by the husband to the wife for such combined alimony and child support shall be reduced by the amount of $200 for each such child for each such month in which such child shall not reside in the home maintained by the wife, and provided that in the event such child shall attend college or university in the Chicago Metropolitan area, and shall reside in the home maintained by the wife, the amount payable by the husband to the wife shall be reduced by the amount of $150.00 for each such child for each month in which such child does not reside in the home of the wife.

\* \* \*

The parties agree that the aforesaid unallocated alimony and child support payments are predicated upon the husband's represented adjusted gross income of Eighty-Six Thousand Dollars ($86,000.00) per year for federal income tax purposes.

The parties further covenant and agree that the amount of alimony so fixed has been arrived at in the light of the knowledge that the wife may hereafter derive income from employment or from other sources; the fact that the wife

may hereafter derive such income shall not be deemed to comprise a ground for the making by the husband of an application of any court of competent jurisdiction for a reduction in the amount of such unallocated alimony and child support."

In addition, Rosemarie was awarded the marital home and was to pay the mortgage, real estate, insurance and maintenance costs relevant to the home. During their 25-year marriage, the parties had six children, two of whom had reached majority when the judgment for divorce was entered. The other children were 17, 14, 12 and 7 years old at the time of the divorce.

In a subsequent order entered on November 28, 1978, section 3 of the judgment for divorce was modified. The relevant part of the modification is as follows:

"A. Paragraph Number 3 of the Agreement (p. 4): That in addition to the provisions for reductions in the amount of support which husband shall pay to wife in conjunction with the attendance by a child at a college or university, the amount which husband shall pay to wife shall also be reduced by the amount of $200 per child upon the attaining of the majority (provided the child is not attending college or university), emancipated or death of any child, whicheger [sic] shall first occur."

Approximately eight years later, on September 22, 1986, Louis filed a petition to modify judgment and subsequent order, requesting that alimony payments be terminated as a result of the following changed circumstances: (1) the only minor child was attending college away from home; (2) Rosemarie was employed full time; and (3) the mortgage would be paid off in several months. In response, Rosemarie moved to dismiss the petition to modify on the ground that the alleged changed circumstances had been anticipated and had been addressed in either the judgment of divorce, dated February 10, 1977, or in the order, dated November 28, 1978.

Following a hearing on the motion, the trial court entered its order, dated August 30, 1988, which included the following findings: (1) the final paragraph of section 3 of the Settlement Agreement is ambiguous and the parties are entitled to a hearing as to the parties' intent regarding modification and termination of the support; (2) the Settlement Agreement does not expressly prohibit modification; it only limits modification to the extent that Louis cannot base a request for reduction of alimony and child support on the fact that Rosemarie earns money; this limitation on modification applies

only until all of the children are attending college or are otherwise emancipated, at which point Louis may request modification on any ground; and (3) Louis is entitled to a hearing on his request for modification of support. Predicated on these findings, the trial court ordered that: (1) Rosemarie's motion to strike and dismiss Louis' petition to modify is denied; (2) Louis' request to terminate maintenance is denied; (3) Louis' request for modification is granted and commencing May 1, 1988, maintenance payments are reduced to $1,600; (4) the monthly sum of $1,600 shall not vary depending on whether the minority child resides with Rosemarie during vacation periods from school; (5) Louis shall pay all of his own attorney fees and costs; and (6) Rosemarie is given 21 days within which to file a petition requesting Louis' payment of or contribution to her attorney fees and costs.

Thereafter, Rosemarie filed a petition for attorney fees and costs, requesting that, based on her inability to pay, Louis pay the balance of her attorney fees and costs. Rosemarie's attorney fees and costs totalled $12,740.96, $2,500 of which Rosemarie had already paid as a retainer. Following a hearing on the petition, the trial court entered its order, dated July 19, 1989, which found, *inter alia*, that the parties had stipulated that Louis had the financial ability to pay the fee requested by Rosemarie's attorney and that Rosemarie had already paid her attorney $2,500. The trial court then ordered Louis to pay to Rosemarie's attorney "the sum of $3800, as and for additional attorney's fees, over and above the $2500 paid to date by Rosemarie," and to pay the additional sum of $259.71 in costs.

Rosemarie appealed from the orders dated August 30, 1988 (maintenance reduction), and July 19, 1989 (attorney fees). Louis cross-appealed.

Initially, Rosemarie contends that the terms of section 3 of the Settlement Agreement were not ambiguous and clearly stated that Louis cannot rely on her subsequent employment as a changed circumstance which warrants a reduction or termination of the monthly obligation.

■ In interpreting settlement agreements, ordinary rules of contract construction apply. As with any contract, the intent of the parties governs the interpretation of the terms. Unless the agreement is incomplete or ambiguous, that intent must be determined from the plain language of the agreement itself. (*Olson v. Olson* (1983), 114 Ill. App. 3d 28, 448 N.E.2d 229.) An agreement is ambiguous if it is susceptible to more than one interpretation (*In re*

*Marriage of Marquardt* (1982), 110 Ill. App. 3d 271, 442 N.E.2d 267), or if its terms are obscure in meaning through indefiniteness of expression. (*Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 398, 378 N.E.2d 1288.) Language is not ambiguous simply because the parties disagree as to its meaning. (*White v. White* (1978), 62 Ill. App. 3d 375, 379, 378 N.E.2d 1255.) Whether an agreement is ambiguous is a question of law to be determined by the trial court. (*In re Marriage of Marquardt* (1982), 110 Ill. App. 3d 271, 442 N.E.2d 267.) If an agreement is found to be ambiguous, its meaning becomes a question of fact. *City of Clinton v. Moffitt* (7th Cir. 1987), 812 F.2d 341.

The specific paragraph of section 3 of the Settlement Agreement which is at issue (the future income paragraph) states:

> "The parties further covenant and agree that the amount of alimony so fixed has been arrived at in the light of the knowledge that the wife may hereafter derive income from employment or from other sources; the fact that the wife may hereafter derive such income shall not be deemed to comprise a ground for the making by the husband of an application of any court of competent jurisdiction for a reduction in the amount of such unallocated alimony and child support."

Rosemarie contends that by agreeing to the above provision, Louis contracted away his right to rely on her future employment as grounds for a reduction in the monthly obligation. In response, Louis argues that use of the term "alimony" in the first clause of the paragraph and use of the term "unallocated alimony and child support" at the end of the paragraph creates an ambiguity because it is reasonable to construe the limitation on modification of monthly payments as ceasing upon the emancipation of the youngest child because, at that point, child support ceases and the monthly payments are transformed into maintenance or alimony.

■ In our view, the use of the terms "alimony" and "unallocated alimony and child support" in the future income paragraph does not create an ambiguity for several reasons. First, the future income paragraph appears in section 3 of the Settlement Agreement, which section is clearly entitled "Unallocated Alimony and Child Support." Second, the term "alimony" is modified by the phrase "so fixed." Louis admits that no amount designated solely as "alimony" was ever fixed. Instead, the only amount fixed was "unallocated alimony and child support." Thus, we find the terms "alimony" and "unallocated alimony and child support" were used

interchangeably in both clauses of the future income paragraph. The reference to "alimony" might have been ambiguous if a certain amount had been established as alimony and a different amount had been established as unallocated alimony and child support. However, that was not the situation here. Third, in construing an agreement, the entire document must be viewed and meaning must be given to every part. (*White v. White* (1978), 62 Ill. App. 3d 375, 378 N.E.2d 1255.) Louis interprets the two clauses of the future income paragraph as referring to two separate obligations, *i.e.*, alimony and unallocated alimony and child support. However, the two clauses are grammatically interdependent and must be read together as referring to the monthly obligation, *i.e.*, unallocated alimony and child support. For example, that part of the second clause which states "the fact that the wife may derive such income" clearly refers to "the income" mentioned in the first clause. There is no other income to which it can reasonably refer. Similarly, the phrase "such unallocated alimony and child support," which appears in the second clause, is a direct reference to the "alimony" referred to in the first clause. To read the two clauses as referring to different obligations would not give effect to the entire paragraph, particularly to the use of the word "such."

■ In our view, section 3 of the Settlement Agreement sets out in detail Louis' monthly obligation, specifically precluding modification of that obligation as the result of Rosemarie's future earnings. In fact, pursuant to section 3, the only events that would reduce or terminate Louis' monthly obligation would be Rosemarie's death or her remarriage. We note that pursuant to Louis' interpretation, once the children are emancipated, his monthly obligation would cease regardless of whether Rosemarie was disabled or in ill health. Considering the circumstances of the parties, this would be an extremely harsh result. Certainly, if the parties intended that Louis' monthly obligation would cease upon the emancipation of all the children, regardless of Rosemarie's personal circumstances, that would have been clearly set forth in the Settlement Agreement and other provisions for her future could have been made. Instead, the parties expressed their intent that the monthly obligation payments should continue until the death or remarriage of Rosemarie. Therefore, because the future income paragraph appears under section 3 of the Settlement Agreement, entitled "Unallocated Alimony and Child Support," the only amount "fixed" by the parties was for unallocated alimony and child support, and the grammatical structure of the future income paragraph mandates that both clauses be read

together as referring to the monthly obligation, we conclude that the future income paragraph is not ambiguous and that it clearly provides that Rosemarie's future income cannot be used as a ground for reducing Louis' monthly obligation. As a result, the trial court erred in allowing extrinsic evidence to be introduced to indicate the intent of the parties.

Next, Rosemarie argues that it was an abuse of discretion for the trial court to determine that there was a substantial change in circumstances warranting a reduction of maintenance. In response, Louis argues in his cross-appeal that the trial court abused its discretion in failing to terminate maintenance. A trial court may modify a maintenance award only upon a showing of a substantial change in circumstances. (*In re Marriage of Henzler* (1985), 134 Ill. App. 3d 318, 480 N.E.2d 147; Ill. Rev. Stat. 1989, ch. 40, par. 510(a).) The party seeking modification has the burden of demonstrating the alleged substantial change in circumstances. (*In re Marriage of Lasota* (1984), 125 Ill. App. 3d 37, 465 N.E.2d 649.) In determining whether a maintenance award should be modified, the trial court is to consider the same factors which, under the IMDMA, are to be assessed in making the initial award. (*In re Marriage of Zeman* (1990), 198 Ill. App. 3d 722, 556 N.E.2d 767.) These factors include: the financial resources of the party seeking maintenance; the standard of living during the marriage; the duration of the marriage; the age and the physical and emotional condition of both parties; the ability of the spouse seeking maintenance to meet her needs independently; and the ability of the other spouse to pay. (*In re Marriage of Ingram* (1989), 185 Ill. App. 3d 395, 541 N.E.2d 731.) The decision to terminate or to modify maintenance payments rests with the sound discretion of the trial court and will not be disturbed absent a showing of abuse of that discretion. *In re Marriage of Zeman* (1990), 198 Ill. App. 3d 722, 556 N.E.2d 767.

Rosemarie argues that none of the three changed circumstances relied upon by Louis, *i.e.*, emancipation of the children, completion of mortgage payments, and her employment, constitutes a substantial change in circumstances which would warrant a modification of the monthly obligation. First, regarding emancipation of the children, Rosemarie claims that the November 28, 1978, order which provided for the $200-per-month reduction in the monthly obligation when each child reached majority or was otherwise emancipated clearly indicated that the parties had previously contemplated the situation and had reached an agreement regarding it. Ordinarily, the emancipation of a minor child constitutes a substantial

change in circumstances to warrant reduction of a maintenance award. (*In re Marriage of Zeman* (1990), 198 Ill. App. 3d 722, 556 N.E.2d 767.) However, in the present case, we find that this change in circumstances was anticipated and addressed in the November 28, 1978, order, which provided, *inter alia*, that:

"A. Paragraph Number 3 of the Agreement (p.4): That in addition to the provisions for reductions in the amount of support which husband shall pay to wife in conjunction with the attendance by a child at a college or university, the amount which husband shall pay to wife shall also be reduced by the amount of $200 per child upon the attaining of the majority (provided the child is not attending college or university), emancipated or death of any child, whicheger [*sic*] shall first occur."

Accordingly, although the circumstance of emancipation of the children occurred after the modification of the Settlement Agreement, appropriate action had already been taken by the parties to adjust to the potential circumstance.

Second, with respect to the mortgage pay off, Rosemarie contends that the amortization schedule on the mortgage had been available at the time of the divorce and had not changed since that time. Accordingly, she argues, it is not a substantial change in circumstances. We agree. If the parties intended that Louis' monthly obligation would be reduced upon pay off of the mortgage, they could have included a provision as to that effect in the Settlement Agreement. Louis has failed to rebut the strong presumption against provisions which could have been easily included at the time of drafting. *Ebrahim v. Checker Taxi Co.* (1984), 128 Ill. App. 3d 906, 471 N.E.2d 632.

Finally, as previously discussed, Louis specifically contracted away his right to rely on Rosemarie's full-time employment as a ground for reducing his monthly alimony/support obligation. Accordingly, because the alleged changed circumstances had previously been contemplated by the parties at the time the Settlement Agreement was drafted in February 1977 and amended in November 1978, we do not find that they constitute sufficient changes in circumstances to warrant reduction of Louis' monthly obligation. Moreover, we note that even if the circumstances had warranted a reduction in the monthly obligation, full disclosure of the financial resources of both parties would have been necessary for the trial court to have reached an equitable determination. In the present case, Rosemarie had fully disclosed her income and expenses. How-

ever, Louis merely stipulated that he had the ability to pay. In our view, Louis' stipulation that he had the ability to pay is not a recommended procedure. In making this observation, we are not suggesting that Louis was attempting to wrongfully conceal any information. We merely note that all relevant facts should be presented to the trial court for a proper assessment of the current circumstances of the parties. See *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 511 N.E.2d 156.

Next, Rosemarie argues that the trial court abused its discretion by failing to require Louis to pay all of her attorney fees incurred in responding to Louis' petition for modification of the Settlement Agreement. Louis argues that the trial court abused its discretion by not requiring Rosemarie to pay all of her own attorney fees.

Rinella and Rinella, the law firm retained by Rosemarie, filed its petition of award of attorney fees and costs, requesting $12,481.25 in legal fees and $259.71 in costs. The petition stated that Rosemarie had paid a $2,500 retainer, that she lacks the ability to pay more, and that Louis has the ability to pay. At the hearing on the fee petition, the parties stipulated as to the hourly rates ($150/hour—office; $175/hour—court) and as to Louis' ability to pay. David Carlson, attorney at Rinella & Rinella, then testified that he was the sole attorney working on the case, that the case was novel and unusual, and then detailed the work he had done. Rosemarie then testified that her gross income in 1988 from her job had been $37,782.93, including a bonus and overtime. Following testimony, the trial court entered its order, ordering Louis to pay $3,800 of Rosemarie's attorney fees over and above the $2,500 already paid by Rosemarie and to pay the $259.71 in costs.

■ Section 508 of the Illinois Marriage and Dissolution of Marriage Act (the IMDMA) (Ill. Rev. Stat. 1989, ch. 40, par. 508(a)) governs allocation of attorney fees and provides, in pertinent part:

> "(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred by the other spouse ***."

The award of attorney fees is a matter within the sole discretion of the trial court, and its decision will not be disturbed absent a show-

ing of abuse of discretion. (*In re Marriage of Stockton* (1988), 169 Ill. App. 3d 318, 523 N.E.2d 573.) The propriety of a fee award is predicated upon a showing by the fee-seeking spouse of his or her inability to pay and the other spouse's ability to pay. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229.

■ In the present case, although the trial court ordered Louis to pay $3,800 of Rosemarie's fees, it is unclear from the record whether the court intended that the attorney fees be limited to $3,800 (Louis' share) + $2,500 (Rosemarie's retainer) or if the court intended that the fee request of $12,481.25 was reasonable, and that Louis was responsible for only $3,800 of that amount, with the balance to be paid by Rosemarie. Before this court can review the allocation of fees, the amount of the attorney fees must be clear from the record. See *In re Marriage of Bramson* (1981), 100 Ill. App. 3d 657, 427 N.E.2d 285.

For the following reasons, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

MANNING, P.J., and O'CONNOR, J., concur.