Sirajuddin S. KHAJA, Appellant–Respondent/Cross–Appellee,

v.

Farzana KHAN, Appellee–Petitioner/Cross–Appellant.

No. 45A03–0806–CV–317.

Court of Appeals of Indiana.

March 17, 2009.

Rehearing Denied May 7, 2009.

J. Douglas Angel, Law Offices of J. Douglas Angel & Associates, Munster, IN, Attorney for Appellant.

Tula Kavadias, Kavadias & Associates, P.C., Crown Point, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Sirajuddin S. Khaja ("Father") appeals the order granting certain claims in the petition for rule to show cause filed by

Farzana Khan ("Mother") and denying his petition to modify child support. Mother cross-appeals the denial of certain claims in her petition for rule to show cause. We affirm in part, reverse in part, and remand for further proceedings.

### Issues

Father raises the following restated issues:

I.    Whether the trial court erred in its choice of law in ruling on Father's petition to modify;

II.   Whether the trial court's findings as to Father's child support arrearage and contempt were clearly erroneous;

III.  Whether the trial court's finding as to educational expenses is clearly erroneous;

IV.   Whether the trial court's award of medical expenses to Mother is clearly erroneous;

V.    Whether the trial court abused its discretion in awarding attorney's fees to Mother and denying Father's request for attorney's fees.

As for Mother's cross-appeal, we address the following dispositive issue:

VI.   Whether she has waived her arguments.

### Facts and Procedural History

Father and Mother have been married twice. They were first married on October 19, 1978, and that marriage was dissolved pursuant to an Illinois judgment on December 28, 1983. Father and Mother have one child, M.K., born May 29, 1982, during their first marriage. Father and Mother were remarried in Illinois on October 4, 1984. Mother subsequently filed a petition for dissolution in Illinois. Father, Mother, and M.K. were Illinois residents at that time. On February 23, 1987, the Illinois court issued its marriage dis-solution decree ("Illinois Decree"), which incorporated the parties' settlement agreement. The settlement agreement provided as follows:

3.   *SUPPORT OF CHILDREN*

a.   Except as otherwise provided herein, the Husband shall pay to the Wife as and for support and maintenance of the child, from February, 1987, until September, 1987, the sum of *SIX HUNDRED ($600) DOLLARS* per month[.]

b.   Commencing with October 1987, the Husband and Wife, after full disclosure by the Husband to the Wife of the Husband's total net income both in salary and profit from his medical practice, shall arrive at a new monthly figure that the Husband shall pay the Wife for the support of the minor child of the parties, strictly based on THIRTY (30%) PERCENT of the Husband's monthly income. For every year commencing with 1988 for as long as the Husband's child support obligation remains pursuant to this Agreement, the Husband shall provide the Wife with his federal income tax return showing his previous year's income upon the filing of said return, and the parties will agree to modify the Husband's monthly child support payments to correspond to THIRTY (30%) PERCENT of his total net income as previously defined. This Court retains jurisdiction over the issue of child support and either party may petition this Court if the parties cannot amiably come to a good faith agreement concerning the monthly child support payments at any time. In any case, the Husband's child support payments, as long as his obligations pursuant to this Agreement exist, shall never be less than SIX HUNDRED ($600) DOLLARS a month[.]

. . . .

4.   *EDUCATION OF CHILD*

a. In addition to the above-mentioned support for the minor child, the Husband shall also pay for the trade school or college and professional education expenses of the child. By "education expenses" there is meant and included, but not by way of limitation, tuition, books, supplies, registration, and other required fees, board, lodging, utilities related to lodging such as telephone, electric, etc., sorority or fraternity dues, assessments and charges, and round trip transportation expenses between the trade school, college or professional school and the home of the child (if the child is in attendance at an out-of-town trade school, college or professional school), those round trips not to exceed four in any calendar year.

b. The Husband's obligation is conditioned upon the following:

i. The child has at that time the desire and aptitude for a trade school, college, or professional school education;

ii. The trade school or college is limited to four consecutive years after graduation from high school, except the time shall be extended in the case of serious injury or military service, and the professional school education is limited to two consecutive years after graduation from college, except the time shall be extended in case of serious illness or military service or in the event the professional school attended extends for a required period beyond two years.

. . . .

5. *MEDICAL, DENTAL, OPTICAL AND RELATED EXPENSES OF CHILDREN*

a. The Husband shall pay for the hospital, surgical optical and orthodontial [sic] care and for the extraordinnary [sic] medical and dental care of the minor child. The term "extraordinary" as used in this paragraph shall include, but not by way of limitation, all teeth straightening, major dental work, psychiatric or psychological care, operations and services rendered as a result of serious illnesses requiring hospitalization or extended medical care, but shall not include routine checkups, minor ailments, drug supplies (except if required in the treatment of serious illness), dental prophylaxis and the like. In the event of serious illness of the child, or the need for hospital, surgical optical or orthodontial [sic] or extraordinary medical or dental care, the Wife shall consult the Husband before incurring expenses in any of those connections. It is understood by both parties that the Wife's obligation to consult the Husband before incurring expenses in any of those connections shall not apply in cases of emergency where the child's life or health might be imperiled by delay.

Appellant's App. at 34–38. In addition, the Illinois dissolution decree provided that Father's obligation to pay child support would continue until M.K. turns twenty-one years of age or completes trade school, college, or professional school. *Id.* at 35.

In 1991, Mother, Father, and M.K. became residents of Indiana. On October 8, 2004, Mother filed in the trial court a petition to domesticate decree of divorce and attached a certified copy of the Illinois Decree. *Id.* at 49. Simultaneously, Mother filed a verified petition for rule to show cause, in which she alleged that Father was in contempt of the Illinois Decree in that he had made no child support payments since May 29, 1999, and had failed to pay college expenses. *Id.* at 66–67. She also requested attorney's fees.

On March 30, 2005, Father filed his petition to modify child support, asserting that all issues regarding child support should be governed by Indiana law and asking the

court to find M.K. emancipated or to modify the Illinois Decree with respect to child support, including educational expenses. *Id.* at 68–69. He also requested attorney's fees.

On May 19, 2008, the trial court issued its order, which provides as follows:

A. By agreement of the parties, the Judgment for Dissolution of Marriage entered by the Circuit Court of Cook County, Illinois on February 23, 1987 shall be and is hereby domesticated and/or registered in Indiana for purposes of enforcement and/or modification pursuant to the provisions of Ind. Code § 31–18–6–1, *et seq.*

B. Pursuant to Ind.Code § 31–18–6–4 the law of the issuing state shall govern the nature, extent, amount, and duration of the support obligation.

C. The Illinois Judgment for Dissolution of Marriage incorporated in its entirety the Settlement Agreement made between the parties regarding all issues of the dissolution of the marriage including the support of and college expenses for their son, [M.K.], born May 29, 1981.

. . . .

G. **Child Support**

. . . .

5. The parties' son turned 21 on May 29, 2002.[He] completed his undergraduate studies and graduated from college in June of 2003. And he is currently attending medical school. Father does not argue that medical school is not within the definition of professional school or a masters' degree program as contemplated in the agreement.

6. Graduation from medical school has required attendance for more than two years after graduation from college. Therefore, by the terms of the agreement, Father's child support obligation would continue until [M.K.] finishes medical school.

. . . .

8. Father filed his Petition to Modify on March 30, 2005. He seeks to modify the agreement and terminate his obligation of support and contribution to college expenses. Contrary to his initial argument concerning the applicable law, Father now contends that Indiana law should apply when considering the request for modification. The Court rejects this contention, see paragraph B above. Father's petition to Modify shall be addressed before Mother's petition even though it was filed later as it may affect Father's obligations to pay child support and educational expenses.

9. Father first contends that the child has reached 21 years of age, has finished four years of college and two years of medical school. Father therefore without any other justification states that child support and payment of education expenses should end. As set forth above, this is contrary to the terms of the agreement. As found above, Father agreed to pay support and educational expenses for a period longer than two years after graduation of college if it took [M.K.] longer than 2 years to complete professional school. Therefore, these facts alone are no basis to terminate or modify Father's obligation under the agreement.

10. Father also argues that the child has not resided with Mother since college and so, child support should abate during the period of time [M.K.] has been away at school. And Father is correct that as a general rule when a child goes away to college child support is reduced or abated for the period of time the child is away at school and an educational support order can be entered. Thus courts generally do not

order continuing child support because it creates a duplication of payment. In this case though, the parties agree to something that the dissolution court probably could not have entered on its own. This does not make the parties' agreement any less enforceable.

11. Father agreed that in addition to child support he would pay educational expenses. Educational expenses as defined in the agreement, included but was [sic] not limited to lodging, utilities, etc. It is clear that the parties anticipated that the child might not live with either parent and would incur living expenses while at school. By the express language of the agreement, child support was to continue even if the child did not reside with Mother. Therefore, even though [M.K.] has not lived with his mother for some time, this fact alone does not relieve Father of his obligation to pay support. Again the terms of the agreement cannot in and of themselves be grounds for modification or termination of his obligation.

12. Father also argues that there has been a change in circumstances, specifically the parties' respective incomes, as the basis for his modification of support. But his motion was filed after the child reached his 21st birthday. The issue is no longer the support of the child. It is the enforceability of an agreement or contract between the parties. Father's burden is to show why this agreement should be modified or terminated. His entire case lies on the premise that continued support is unfair and a windfall to Mother. But, that is the deal he made and the agreement this Court must enforce.

13. Father's contention that he is financially unable to pay the child support and college expenses is not supported by the evidence. The income reflected on his tax returns and his real estate investments support this Court's finding that he continues to experience financial stability despite his alleged bad business investment. He further argues that Mother's income has changed and should be considered. But, by the terms of the agreement, Mother's income was not to be a factor in determining child support or the duration of Father's obligation to pay child support. The agreement is not now unconscionable simply because Father decides he does not want to honor the agreement. The Court notes that even in the alleged bad years, 30% of Father's net income was never below the minimum child support set forth in the agreement.

14. Therefore, for the reasons stated above, Father's Petition to Modify is DENIED in its entirety.

15. Turning to Mother's Petition for Contempt, it is undisputed that from February 1987, until September 1987 Father paid $600.00 per month in a timely manner.

16. It is undisputed that Father never provided Mother with a copy of his tax return until after she filed her petition in 2004.

17. Despite the fact that Father failed to provide a copy of his tax returns he did pay, until August of 1999, no less than $600.00 per month. It is undisputed that Father paid $600.00 per month, in a timely manner, until 1989. It is also undisputed that thereafter, until August of 1999, he increased the monthly payment as indicated below:

a. in 1989 the support increased to $800.00 per month;

b. in 1990 the support increased to $1,000.00 per month;

c. in 1994 the support increased to $1,200.00 per month;

d. in 1996 the support increased to $2000.00 per month;

e. in 1997 the support increased to $2,500.00 per month and was paid in a timely manner until August 1999.

18. There is evidence to suggest that up to August of 1999 there were discussions between Mother and Father about Father's income and about the amount of child support that should be paid. Father contends that he increased his support based upon the parties' agreement following these discussions. Mother contends that Father never made full disclosure of his income, and that she never agreed to the increases. She does admit that she accepted the payments as listed above.

19. .... Mother by her own actions, or in this case inaction, voluntarily accepted or acquiesced to the payments Father made for those 11 plus years. Based on the Illinois case of *Babcock v. Martinez,* [368 Ill.App.3d 130, 306 Ill. Dec. 512] 857 N.E.2d 911 (Ill.App.Ct. 2006) estoppel and laches would apply here. Mother is barred from now asking for the enforcement of the terms of the agreement prior to 1999. Mother's request for retroactive modification of the child support for the period beginning with the entry of the [Illinois] Decree in 1987 to August 1999 is DENIED.

20. It is undisputed that after August 1999 Mother received no child support from Father.

. . . .

34. Father argues that Mother has failed to prove what 30% of his net income should have been. This Court does not agree. Father's corporate tax returns were admitted into evidence and those returns substantiate the income claimed on his personal returns. And Father is correct, pursuant to Illinois law he would be allowed to deduct certain business expenses and taxes in arriving at his net income.

35. The corporate returns reflect his claimed business expenses. This Court declines to consider Mother's argument that the deductions of Father's corporate returns are inappropriate. The returns were filed with the IRS and there has been no evidence to suggest that any of the expenses claimed were questioned by the IRS. Mother failed to provide expert testimony as to the legitimacy of the expenses claimed on the returns. Her opinion alone is insufficient.

36. Applying Illinois law, Father's net income can be determined by simply subtracting the federal tax owed from his adjusted gross income.

37. Neither party submitted any evidence as to Father's 2007 or 2008 income. Although Father failed to provide evidence of his income, it was Mother's burden to show Father's income. The agreement saves all from further delay in this matter as it provides for a minimum monthly support of $600.00 per month. Therefore, that figure will be used for the calculation of the arrearage for the years in which no tax returns were provided.

38. Attached hereto, marked Exhibit B and made a part hereof is a calculation of what 30% of Father's net income was, and the amount of child support owed for the period of 1999 to date.[1]

39. Father is found in contempt for his failure to pay the child support pur-

1. As noted earlier, the settlement agreement provided that as of October 1987, Father's child support would be calculated as thirty percent of his net income. Appellant's App. at 34–35.

suant to the parties' agreement for the period of August 1999 to date. Father owes to Mother the sum of $310,004.52 for child support for this period.

. . . .

### H. Medical Expenses

1. Pursuant to the terms of the agreement, Father was to pay for all of the child's "hospital, surgical optical and orthodontial (sic) care and for the extraordinnary (sic) medical and dental care[.]"

2. Further, his obligation to pay these expenses was to "terminate simultaneously with the termination of his child support obligation[.]"

3. On June 3, 2004, [M.K.] had Lasik eye surgery at a cost of $2,448.00. Mother paid this expense.

4. The expense was incurred during the time period that Father had a continuing obligation to pay support. Therefore under the terms of the agreement he has an obligation to pay this expense.

5. Demand was made upon Father for the payment of the eye surgery and he failed to reimburse Mother. Father owes to Mother the sum of $2,448.00.

### I. Educational Expenses

. . . .

6. But, Mother has failed to submit any evidence regarding the professional school educational expenses other than she believes that M.K. took out loans. She admits that she did not pay the expenses. She has failed to satisfy her burden of proof and contempt cannot be granted. This should in no way be considered a finding or ruling that Father has complied with his obligation to pay for the educational expenses.

7. Mother's petition for contempt for non-payment of education costs is DENIED without prejudice.

### J. Attorney Fees

1. Father was found in contempt for non-payment of a substantial amount of child support.

2. Further, this Court finds that there was delay and unnecessary attorney fees incurred due to Father's obstreperousness. He failed to timely and in a cooperative manner produce his corporate and individual tax returns.

3. Therefore, as and for his contempt and his lack of cooperation during these proceedings he shall be ordered to contribute to Mother's attorney fees.

4. That Mother has paid in excess of $14,000.00 as and for attorney fees and costs for maintaining and defending her position in this proceeding.

5. The Court has considered the length of time necessary to obtain the results and the hourly rate of compensation requested and finds that the attorney fees and costs incurred are reasonable, fair and equitable under the circumstances.

6. The Court has also considered the present economic circumstances of [the] parties, their incomes and earning capacities, the size of the child support arrearage, the length of time necessary to obtain the desired results and Father's conduct in drawing out the ultimate resolution of the matter.

7. Father shall pay to Mother as a contribution to her attorney fees the sum of $10,000.00.

### K. Judgment

1. Father owes to mother the following sums:

| | |
|---|---|
| a. child support | $310,004.52 |
| b. reimbursement of medical expenses | $ 2,448.00 |
| c. attorney fees | $ 10,000.00 |
| | $322,455.52 |

2. Judgment is entered in favor of [Mother] and against [Father] in the sum of $322,455.52.

*Id.* at 12–28 (citations omitted). Father appeals, and Mother cross-appeals.

### Discussion and Decision

The trial court sua sponte entered findings with its order.

If a trial court enters specific findings of fact and conclusions sua sponte, we apply the following two-tiered standard of review: whether the evidence supports the findings, and whether the findings support the judgment. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, i.e., when the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment.

*Fowler v. Perry,* 830 N.E.2d 97, 102 (Ind. Ct.App.2005).

Father's appeal of the denial of his petition to modify and Mother's cross-appeal of the partial denial of her petition for rule to show cause are appeals from a negative judgment. Where the party who had the burden of proof at trial appeals, he or she appeals from a negative judgment and will prevail only if he or she establishes that the judgment is contrary to law. *Todd Heller, Inc. v. Ind. Dep't of Transp.,* 819 N.E.2d 140, 146 (Ind.Ct.App.2004), *trans. denied* (2005). "A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion." *Id.*

### I. Father's Petition to Modify

The trial court found that the Illinois Decree was domesticated and/or regis-

tered in Indiana for purposes of enforcement and/or modification pursuant to the Uniform Interstate Family Support Act ("UIFSA"), which is codified at Indiana Code Sections 31–18–1–1 to 31–18–9–4. Additionally, the trial court found that Illinois law governed both enforcement of the Illinois Decree, as Mother requested in her petition for rule to show cause, and modification of the Illinois Decree, as Father requested. In determining that Illinois law applied, the trial court cited Indiana Code Section 31–18–6–4, which states that the "law of the issuing state shall govern the nature, extent, amount, and duration of the support obligation." Father argues that the trial court erred in failing to apply Indiana law in determining whether to modify the Illinois Decree. In support, he cites Indiana Code Section 31–18–3–3 and *Batterman v. Bender,* 809 N.E.2d 410 (Ind. Ct.App.2004).

Indiana Code Section 31–18–6–4, upon which the trial court relied, applies to the enforcement of foreign support orders registered in this state. *See Batterman,* 809 N.E.2d at 413 (observing that Section 31–18–6–4 applies to the *enforcement* of a foreign support order after it has been registered). Thus, the trial court correctly applied Illinois law in determining whether Father was in contempt of the Illinois Decree and the amount of child support arrearage.

However, the UIFSA treats *modification* of a child support order of another state differently. To understand how, we must closely examine the intersection of three different sections of the UIFSA. First, we note that Indiana Code Section 31–18–6–11 specifically governs modification of a child support order of another state and provides in relevant part:

(b) Modification of a registered child support order is subject to the same

requirements, procedures, and defenses that apply to the modification of an order issued by an Indiana tribunal. The order may be enforced and satisfied in the same manner.

(c) An Indiana tribunal may not modify any aspect of a child support order that may not be modified under the law of the issuing state.[2]

Next, Indiana Code Section 31–18–3–1 states that "except as otherwise provided in the article, this chapter applies to all proceedings [including] registration of an order for child support of another state for modification under IC 31–18–6." Finally, Indiana Code Section 31–18–3–3 states:

Except as otherwise provided by this article, a responding Indiana tribunal:

(1) Shall apply the procedural and substantive law, including the rules on choice of law, generally applicable to similar proceedings originating in Indiana and:

(A) may exercise all powers; and

(B) provide all remedies; available in the proceedings; and

(2) Shall determine the duty of support and the amount payable under the child support guidelines adopted by the Indiana supreme court and any other relevant Indiana law.

Thus, for the modification of a foreign support order, Indiana Code Section 31–18–3–3 calls for the application of Indiana law. We find support for our conclusion in *Batterman*, 809 N.E.2d 410. In that case, Thomas and Laurel were married in Wisconsin, had two children, and were divorced in Wisconsin. Laurel and the children moved to Vincennes, Indiana, while Thomas remained in Wisconsin. Thomas filed a motion for modification of his Wisconsin child support order in the Knox Circuit Court. "[T]he trial court entered an order on jurisdictional issues, concluding that Thomas and Laurel had consented to jurisdiction in Indiana and the substantive law of Indiana and that Thomas had not complied with the requirement to register the Wisconsin child support order." *Id.* at 411. The trial court issued a child support order based on the Indiana Support Guidelines.

Thomas appealed, arguing, inter alia, that the substantive law of Wisconsin should control enforcement and modification. In support, Thomas cited Indiana Code Section 31–18–6–4. However, the *Batterman* court observed that Section 31–18–6–4 applies to the enforcement of a foreign support order after it has been registered, whereas Indiana Code Section 31–18–6–11 applies to the modification of a foreign support order. 809 N.E.2d at 413. The court noted that modification, rather than enforcement, of a foreign support order was the focus of the case. The *Batterman* court therefore concluded that Indiana Code Section 31–18–3–1 *et seq.* applied, and that Indiana Code Section 31–18–3–3 required that Indiana substantive law govern the modification of the Wisconsin support order. *Id.*

Accordingly, we conclude that the trial court's decision to apply Illinois law to the modification of the Illinois Decree is contrary to law. While Father argues that he

---

**2.** 750 Illinois Compiled Statute 5/502(f) provides, "Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." 750 Illinois Compiled Statute 5/510 provides that "[e]xcept as otherwise provided … the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification."

is entitled to modification of child support, including education expenses, under Indiana law, we observe that the trial court did not make findings in this regard. We therefore remand to the trial court to apply Indiana law to Father's request for modification of child support.[3]

### II. Child Support Arrearage

■ First, Father asserts that the trial court's findings do not support its conclusions and judgment regarding his child support arrearage after August 1999 and its finding of contempt in this regard. In her appellee's brief, Mother did not respond to this argument.

An appellee's failure to respond to an issue raised in an appellant's brief is, as to that issue, akin to failing to file a brief. This failure does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required. However, counsel for appellee remains responsible for controverting arguments raised by appellant. For appellant to win reversal on the issue, he must establish only that the lower court committed prima facie error. Prima facie means at first sight, on first appearance, or on the face of it.

*Cox v. State*, 780 N.E.2d 1150, 1162 (Ind. Ct.App.2002) (citations omitted).

Specifically, Father argues that after August 1999, when M.K. started college, Mother and he agreed that in lieu of making child support payments to her, Father would provide other financial support to M.K. According to Father, this "other financial support" included payments for automobile insurance and cell phone service and totaled $42,397.30 as shown in Finding 27. Appellant's App. at 22. Father argues that he was not required to provide M.K. with spending money, auto insurance,

or a cell phone under the Illinois Decree's definition of educational expenses, and that therefore Mother's agreement to this other financial support precludes her claim for child support arrearage.

In Finding 28, the trial court found that the Illinois Decree defined educational expenses as including, but not limited to, "tuition, books, supplies, registration, and other required fees, board, lodging, utilities related to lodging such as telephone, electric, etc., sorority or fraternity dues, assessments and charges, and round trip transportation expenses[.]" *Id.* In Finding 29, the trial court further found that Father failed to explain how his alleged additional forms of financial support differ from the educational expenses he was already obligated to pay. *Id.* Given the Illinois Decree's expansive definition of educational expenses, we conclude that Father has failed to establish prima facie error. Accordingly, we conclude that the trial court's finding that Father owed child support from August 1999 is not clearly erroneous. It follows that the trial court's contempt finding in this regard is not clearly erroneous. *See* Appellant's App. at 25 (Finding 39).

■ Father next contends that the trial court erred in calculating his child support arrearage in that it applied an incorrect formula for determining his net income. The trial court determined Father's net income by subtracting his federal tax payment from his adjusted gross income as it appeared on his federal income tax returns. Appellant's App. at 24 (Finding 36). Father contends that his net income should be determined as provided under Illinois law. *See* 750 Ill. Comp. Stat. 5/505(a)(3) (defining net income as all income from all sources minus certain enumerated deductions).

---

**3.** Indiana Code Section 31–16–8–1 governs modification of a child support order.

Mother counters that the parties' settlement agreement, incorporated into the Illinois Decree, defines "net income" and that definition controls. We agree.

In interpreting settlement agreements, ordinary rules of contract construction apply. As with any contract, the intent of the parties governs the interpretation of the terms. Unless the agreement is incomplete or ambiguous, that intent must be determined from the plain language of the agreement itself. An agreement is ambiguous if it is susceptible to more than one interpretation or if its terms are obscure in meaning through indefiniteness of expression. Language is not ambiguous simply because the parties disagree as to its meaning. Whether an agreement is ambiguous is a question of law to be determined by the trial court.

*In re Marriage of Lehr*, 217 Ill.App.3d 929, 160 Ill.Dec. 840, 578 N.E.2d 19, 22–23 (1991) (citations omitted).

According to the Illinois Decree, Father was to make "full disclosure" of his "total net income both in salary and profit from his medical practice" and provide Mother "with his federal income tax return showing his previous year's income[.]" Appellant's App. at 34–35. It then provides that based on Father's federal income tax return, the parties would modify Father's child support to thirty percent of his "total net income as previously defined." *Id.* at 35. While not a model of clarity, the Illinois Decree indicates that the full disclosure of Father's total net income refers to his net income as it appears on his federal income tax return. *See In Re Marriage of Yaxley*, 259 Ill.App.3d 544, 197 Ill.Dec. 249, 631 N.E.2d 252, 255 (1994) (finding

that pursuant to settlement agreement, father's federal income tax returns were basis for determining net income). As such, Father has failed to show that the trial court's Finding 36 is clearly erroneous.[4]

### III. Educational Expenses

■ In Finding 6, the trial court found that Mother failed to satisfy her burden of proof as to M.K.'s education expenses. It therefore concluded that her claim for education expenses could not be granted, but specified that the finding should not be considered as a ruling that Father had complied with his obligation to pay educational expenses. Appellant's App. at 27. In Finding 7, the trial court denied Mother's petition for contempt for non-payment of educational costs "without prejudice." *Id.* Father argues that because the claim has been tried on the merits, he is entitled to judgment in his favor as a matter of law. Additionally, he claims that he paid $18,000 in contributions to M.K.'s educational expenses between April 2006 and May 2007 and that the trial court failed to give him credit for these payments. Mother failed to respond to these arguments in her appellee's brief, and therefore Father need only establish prima facie error. *See Cox*, 780 N.E.2d at 1162.

As to Finding 7, we agree that Mother's claim for past educational expenses was tried on the merits, and therefore the issue is res judicata. *See Richter v. Asbestos Insulating & Roofing*, 790 N.E.2d 1000, 1002 (Ind.Ct.App.2003) ("[T]he doctrine of res judicata bars litigating a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies."). However, as of May 19, 2008, M.K. was still in medical school. We presume that

---

4. Father also asserts that based on the definition of net income as provided by Illinois law, Mother failed to carry her burden to establish the amount of child support he owed. Because we reject his argument that Illinois law defines his net income, we need not address this argument.

the trial court denied Mother's claim without prejudice so that if Father did not provide for M.K.'s future educational expenses, Mother would not be precluded from bringing a claim for those expenses. Based on that presumption, we find no error.[5]

### VI. Medical Expenses

■ Father contends that the trial court erred in finding that he owed $2,448 for M.K.'s Lasik eye surgery. *See* Appellant's App. at 26 (Finding 5). Mother has not responded to this argument, and therefore we will reverse upon a prima facie showing of error. *See Cox*, 780 N.E.2d at 1162. Specifically, Father asserts that the Illinois Decree requires Mother to consult with him prior to incurring surgical expenses and that Mother failed to do so. Our review of the Illinois Decree shows that Mother was required to consult with Husband except "in cases of emergency where the child's life or health might be imperiled by delay." Appellant's App. at 38. There is no indication that M.K.'s Lasik surgery was a case of emergency. Further, it is undisputed that Mother did not consult with Father prior to the Lasik eye surgery. Accordingly, we conclude that Father has established prima facie error.

### V. Attorney's Fees

■ Father challenges the award of attorney's fees to Mother and the denial of his request for attorney's fees. Mother did not respond to this argument, and therefore Father need only establish prima facie error. *See Cox*, 780 N.E.2d at 1162.

■ The trial court has broad discretion in awarding attorney's fees in post-dissolution proceedings. *Claypool v. Clay-*

*pool*, 712 N.E.2d 1104, 1110 (Ind.Ct.App. 1999), *trans. denied* (2000). When determining whether an award of attorney's fees is appropriate, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors bearing on the reasonableness of the award. *In re Marriage of Bartley*, 712 N.E.2d 537, 546 (Ind. Ct.App.1999). In addition, any misconduct on the part of one of the parties that directly results in the other party incurring additional fees may be taken into consideration. *In re Marriage of Lewis*, 638 N.E.2d 859, 861 (Ind.Ct.App.1994).

Given our determination that the trial court properly found that Father was in contempt for failing to pay child support pursuant to the Illinois Decree, Father's argument that the award of attorney's fees is an abuse of discretion because it was based on the contempt finding must fail. *See id.; see also Hanson v. Spolnik*, 685 N.E.2d 71, 80 (Ind.Ct.App.1997) ("[M]isconduct that directly results in additional litigation expenses may be properly taken into account in the trial court's decision to award attorney's fees."), *trans. denied.* Nevertheless, Father contends that the evidence does not support the trial court's finding that he was uncooperative, untimely, or obstreperous regarding discovery. *See* Appellant's App. at 27 (Finding 2). Our review of the record shows that there is some evidence to support the trial court's finding that Father was uncooperative. *See* Tr. at 123 (Father does not deny that repeated requests had to be made before he complied with discovery). We must consider only the evidence that supports the judgment; we may not reweigh the evidence. *See Fowler*, 830 N.E.2d at 102. Therefore, this argument must fail.

---

5. Father claims that the trial court failed to properly credit him $18,000 for unspecified educational contributions. We have examined the portions of the record cited by Father, and they do not provide a sufficient basis for a prima facie showing of error.

Father further argues that Mother presented no evidence to show the amount of attorney's fees related to discovery. However, we have found that the award of attorney's fees was based both on the finding of contempt and on Father's uncooperativeness during discovery. We conclude that Father has failed to establish prima facie error. As such, we cannot say that the $10,000 awarded to Mother is an abuse of discretion.[6] It follows that the trial court's denial of Father's request for attorney's fees was not an abuse of discretion.

### VI. Mother's Cross–Appeal

■ Mother contends that the trial court erred in ruling that Father owed no child support arrearage for the period prior to 1999. Mother also argues that the trial court erred in calculating Father's child support for 2007 and 2008. In his reply brief, Father asserts that Mother has waived these arguments because she has failed to present a cogent argument. *See, e.g., Loomis v. Ameritech,* 764 N.E.2d 658, 668 (Ind.Ct.App.2002) (holding argument waived for failure to cite authority or provide cogent argument), *trans. denied.* As to the pre–1999 child support arrearage, although Mother cites some cases, she fails to explain how they support her argument. And, as to the 2007 and 2008 child support calculations, Mother fails to cite any authority to support her position. Accordingly, we conclude that Mother has waived her arguments.

### Conclusion

In sum, we affirm (1) the trial court's findings as to Father's child support arrearage and contempt, (2) the trial court's finding as to educational expenses, and (3) the award of attorney's fees to Mother. We reverse the denial of Father's petition to modify and the finding that Father owes Mother $2,448.00 for M.K.'s Lasik eye surgery and remand for application of Indiana law to the modification of child support and for the judgment to be reduced to $320,007.52. If findings regarding modification of child support require any additional adjustment in the amount Father owes Mother, the judgment will be accordingly adjusted.[7]

Affirmed in part, reversed in part, and remanded.

ROBB, J., and BROWN, J., concur.

---

6. In determining the amount of the award, the trial court "considered the present economic circumstances of parties, their incomes and earning capacities, the size of the child support arrearage, the length of time necessary to obtain the desired results and Father's conduct in drawing out the ultimate resolution of the matter." Appellant's App. at 18 (Finding 6).

7. A petition to modify may relate back to the date the petition is filed or any date thereafter, but not to a date before the petition was filed. *Carter v. Dayhuff,* 829 N.E.2d 560, 568 (Ind.Ct.App.2005); *see also* Ind.Code § 31–16–16–6.