MONROE DEARBORN LIMITED PARTNERSHIP, Plaintiff-Appellant, v. BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellee.

First District (4th Division)   No. 1—93—3333

Opinion filed March 31, 1995.—Rehearing denied May 1, 1995.

O'Keefe, Ashenden, Lyons & Ward, of Chicago (Mark R. Davis, Patrick L. Moore, and Henry T. Kelly, of counsel), for appellant.

Rieff & Scanlon, of Chicago (James M. Scanlon, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, the Monroe Dearborn Limited Partnership, appeals from the dismissal with prejudice of its complaint under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)), for failing to state a cause of action against the defendant, the Board of Education of the City of Chicago. We consider whether the plaintiff alleged facts in its complaint to show that it was entitled to a rent reduction under its lease of the defendant's property because the tax assessment on its leasehold lawfully included the defendant's tax-exempt interest in the land. For the following reasons, we reverse and remand.

On March 21, 1993, the plaintiff filed a verified complaint, which was subsequently amended, against the defendant for declaratory judgment, injunctive relief, and other relief. In the amended complaint, the plaintiff alleged that the defendant owned the property at 30 West Monroe, in Chicago, Illinois, which it leased to the Inland Steel Company (Inland) for a term of almost 99 years beginning on November 10, 1954, and ending on October 31, 2053. The lease provided that during its term, the lessee would have title to and ownership of any improvements made on the property, but the improvements would pass to the lessor at the end of the lease term without compensation to the lessee. Also, rent under the lease would be paid solely for the land and the demise of the land and not for the improvements.

Pursuant to the lease, Inland built an office building on the property in 1958. Subsequently, as allowed under the lease, the La Salle National Bank, as trustee under a trust, purchased the leasehold and improvements from Inland on September 8, 1989. The plaintiff is the beneficial owner of the trust.

The plaintiff also alleged that the defendant's property was exempt from general taxes, but because it was leased to a nonexempt entity, the assessor of Cook County has assessed and taxed the leasehold of the property during the lease term under section 26 of the Revenue Act of 1939 (35 ILCS 205/26 (West 1992) (now, as

amended, 35 ILCS 200/9—195 (West Supp. 1993))). That section provides that in such circumstances the taxable leasehold estate shall be listed as the property of the lessee. Section 20(2) of the Revenue Act of 1939 requires that "[e]ach taxable leasehold estate shall be valued at $33^1/_3$% of its fair cash value." 35 ILCS 205/20(2) (West 1992) (now, as amended, 35 ILCS 200/9—145(b) (West Supp. 1993)).

As alleged in the complaint, section 2.6 of the lease reflected the parties' understanding that because the defendant was a taxing body which levied taxes against property within its boundaries, including the property the plaintiff was leasing, the defendant would receive income from taxes assessed against the plaintiff's leasehold in addition to the rent under the lease. Also, taxes would be levied and paid by the lessee solely "on account of the buildings or improvements located on the [property]." Section 2.6 provided, in part, that the rent would be increased "[i]n the event that, for any reason, no taxes shall be levied on, or on account of, the buildings or improvements at the time located on said demised land, by the State of Illinois or any political subdivision thereof." On the other hand, section 2.6 also provided that the rent would be reduced if taxes were assessed on or on account of the lessor's interest, as stated in the following excerpt:

> "In the event that, for any reason and regardless of who owns the demised land, any taxes shall be lawfully levied by the State of Illinois or any political subdivision thereof, at any time during the term of this lease, on, or on account of, the demised land or the interest of the Lessor therein or the reversionary estate therein, then, and in such event, if such taxes are paid by or for the account of the Lessee, the rental hereinabove reserved for each full year, for which any such taxes shall be so levied, shall be reduced ***."

The plaintiff alleged that when the parties entered into the lease, the law provided that the interest of a lessor in the premises was the value of his reversion with the rents added and the interest of lessee in the premises was the value of his term subject to the rents, citing *Corrigan v. City of Chicago* (1893), 144 Ill. 537, 33 N.E. 746. Also at that time, the assessor assessed value on long-term taxable leaseholds based only on the value of the improvements and not on the land and, as a result, the assessed value of a leasehold was less than the value of the fee simple interest in the property.

However, subsequently, according to the plaintiff's allegations, the law changed regarding assessing the value of a leasehold of otherwise tax-exempt land for tax purposes in *People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11, 233 N.E.2d 568. The plaintiff alleged that in *American Airlines*, the supreme court held

the assessed value of a leasehold of otherwise tax-exempt property "included both the equity value of the lessee's interest (if any) and the value of the lessor's interest in the rents reserved under the lease."

Applying the formula of *American Airlines*, the plaintiff alleged the value of the leasehold in this case, with a remaining term of 60 years, is substantially identical to the value of the property in fee simple. The plaintiff alleged that valuing the leasehold at substantially the same value as the fee simple interest was now lawful under *American Airlines* and was a higher assessment than the assessment of the same taxable leasehold under the assessor's prior policy. Also, the assessor has followed *American Airlines*, as he is required to do, and has valued the plaintiff's leasehold at the same amount as the fee simple value. As a result, the value of the demised land and the value of the defendant's interest in it are included in the value of the leasehold. Because the assessment of the leasehold includes the value of the defendant's interest in the demised land, the plaintiff alleged that part of the taxes paid on the leasehold were "on account of" the defendant's interest. The plaintiff alleged that the value of the leasehold has been assessed in this manner since at least 1970 through 1991. The plaintiff requested, among other relief, a declaratory judgment that it has overpaid rent on the property because the value of the defendant's interest as lessor has been included in the assessment of the plaintiff's leasehold from 1970 to 1991, and will continue to be assessed in that manner in the future.

The plaintiff attached two affidavits as exhibits to its complaint. One of the affidavits was from a real estate appraiser, Michael J. Kelly, who was familiar with the valuation, assessment, and taxation of leaseholds under the formula set in *American Airlines*. The appraiser explained the formula and concluded that for leaseholds with extremely long remaining terms, such as 50 years, "[s]ince the rental used in the *American Airlines* formula reflects rental for both improvements and land, the taxable leasehold value produced by the formula includes a value for the improvements and the land." The appraiser also reviewed the 1991 assessment of the leasehold and other similar leaseholds and stated that it appeared that the assessment included the lessor's interest in the ground rent and reversion.

The other affidavit the plaintiff attached to its complaint was from an attorney, Paul J. Reilly, who had worked in the assessor's office and was familiar with the assessment of leaseholds of tax-exempt properties. He reviewed the assessment for the property in question and stated that if the taxable leasehold value was established under the *American Airlines* formula, it "would reflect the present worth of

rental for both improvements and land, and such taxable leasehold value would therefore include a value for the improvements and the land." He also stated that when the lease has a long remaining term, the full market rental value, for practical purposes, represents the fee simple value because the market value of the reversionary interest is minimal.

The defendant responded to the amended complaint with a motion to dismiss for failure to state a cause of action under section 2—615. The defendant argued that the plaintiff did not demonstrate that the assessor lawfully levied taxes on its leasehold "on, or on account of" the demised land, the defendant's interest in the demised land, or the defendant's reversionary interest as required under section 2.6 of the lease. The defendant also disputed the plaintiff's interpretation of *American Airlines* as alleged in its complaint and maintained that under *American Airlines,* the defendant's interest in the property could not be lawfully assessed and taxed. Further, the defendant asserted that the allegations of the complaint were conclusory.

At the hearing on the motion to dismiss, the trial judge apparently found that the plaintiff did not allege facts to support its conclusion that the assessment of the plaintiff's leasehold included the defendant's tax-exempt interest. The judge also found that the language of section 2.6 was not ambiguous. The plaintiff's complaint was dismissed with prejudice and the plaintiff now appeals.

OPINION

Under section 2—615, a complaint may be dismissed for failure to state a cause of action. (735 ILCS 5/2—615 (West 1992).) When considering a motion to dismiss under section 2—615, the court must accept as true the well-pled facts alleged in the complaint and any reasonable inferences which may be taken therefrom (*Dworak v. Village of Wilmette* (1993), 249 Ill. App. 3d 275, 618 N.E.2d 974); however, conclusory allegations of law or fact are not admitted (*People ex rel. Peters v. Murphy-Knight* (1993), 248 Ill. App. 3d 382, 618 N.E.2d 459). A cause of action should not be dismissed unless it appears that no set of facts could be proven that would entitle the plaintiff to recover. (*Dworak,* 249 Ill. App. 3d 275, 618 N.E.2d 974.) On appeal from the dismissal of a complaint for failure to state a claim, the reviewing court must consider the issue *de novo. Toombs v. City of Champaign* (1993), 245 Ill. App. 3d 580, 615 N.E.2d 50.

Because the plaintiff in this case seeks a rent reduction under the lease, it is essential to consider the terms of the lease to determine whether the complaint states a cause of action. The rules for constru-

ing a lease are the same as the rules for construing any other contract. (*Midland Management Co. v. Helgason* (1994), 158 Ill. 2d 98, 630 N.E.2d 836.) The court must give effect to the intent the parties had at the time they entered into the agreement as evidenced by the language used in the contract (*In re Doyle* (1991), 144 Ill. 2d 451, 581 N.E.2d 669), and it is presumed that the parties contracted with knowledge of the existing law (*Braeside Realty Trust v. Cimino* (1985), 133 Ill. App. 3d 1009, 479 N.E.2d 1031). Whether a contract is ambiguous is a question of law for the court to decide. (*Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 565 N.E.2d 990.) If the agreement is not ambiguous, the court may determine the parties' intent as a matter of law (*Quake Construction*, 141 Ill. 2d 281, 565 N.E.2d 990), giving the words used their common and generally accepted meaning (*Chicago Housing Authority v. Rose* (1990), 203 Ill. App. 3d 208, 560 N.E.2d 1131). However, if an agreement is ambiguous or capable of more than one interpretation, the court may consider parol evidence to ascertain the parties' intent. (*Quake Construction*, 141 Ill. 2d 281, 565 N.E.2d 990.) The interpretation of an ambiguous contract is one of fact which may not be decided on a motion to dismiss under section 2—615. *Quake Construction*, 141 Ill. 2d 281, 565 N.E.2d 990.

■ This court must consider the language in section 2.6 of the lease to determine the parties' intent at the time they entered into the agreement. Section 2.6 allowed a rent reduction if, for any reason and without regard to who owned the land, taxes were lawfully assessed "on, or on account of" the land, the lessor's interest in the land, or the reversionary estate. The parties agree that taxes could not be lawfully assessed on the defendant's interest in the property because the defendant's interest was tax exempt and the plaintiff would not be entitled to a rent reduction under the lease for an unlawful assessment. (See *People ex rel. Paschen v. Hendrickson-Pontiac, Inc.* (1956), 9 Ill. 2d 250, 137 N.E.2d 381.) Therefore, the plaintiff's entitlement to a rent reduction under section 2.6 must be based on its allegations that there was a lawful assessment of a tax against its leasehold "on account of" the defendant's interest in the property.

Primarily, the parties dispute whether the language used in section 2.6 encompasses a change in the assessor's method of valuing leaseholds. According to the plaintiff, leaseholds were assessed under the formula in *Corrigan* at the time the parties entered into the lease. *Corrigan* was an eminent domain case where the supreme court considered the value of a lessee's interest in property when the whole property was condemned. The court stated that because the

condemnation extinguished the parties' obligation under the lease, the lessor was entitled to compensation for the value of his reversion and the rents, and the lessee was entitled to the value of her term subject to the rent to be paid. If the value of the leasehold estate exceeded the rental, the lessee would be entitled to recover the excess, but if the value was less than the reserved rent, the lessee would be entitled to nothing.

Subsequently, after the parties entered into the lease in this case, the supreme court decided *American Airlines.* In that case, the court considered the propriety of a tax assessed against the defendant's leasehold of tax-exempt property. The court stated that the tax in question was not levied on the demised premises, which was tax exempt, but was levied on the defendant's leasehold estate. In discussing the defendant's reliance on *Corrigan*, the court acknowledged that it was an eminent domain case which determined the amount of compensation to be paid to a lessee when the entire property was taken and agreed with the defendant that the concept of fair cash value did not depend on the type of judicial proceeding involved. However, the court stated that: "the concept of fair cash value does depend upon what is being valued. What was being valued in the *Corrigan* case was the equity of the lessee in a lease that had been abrogated. What is being valued here is the right to occupy and use the leased property until the expiration of the lease." (*American Airlines,* 39 Ill. 2d at 16, 233 N.E.2d at 571.) The court stated that fair cash value is the equivalent of fair market value and:

> "The fair cash value of a leasehold is its rental value in the market—the amount a willing lessee will pay a willing lessor, in a voluntary transaction, for the right to use and occupy the premises. [Citations.] For tax evaluation purposes, an approved technique is to calculate the lump sum that represents the present economic equivalent of the periodic market rental to be paid through the unexpired term of the lease. [Citation.] Since a longer lease is more valuable than a shorter one, market rental tends to decrease from year to year as the unexpired term of the lease decreases. \*\*\*

> The current annual market rental represents the current annual value of the leasehold, and is the appropriate base figure from which to compute the value of the leasehold for the unexpired term. But the rent is to be paid in annual installments, not in a lump sum. The present value of those future installments must therefore be ascertained. The amount which if invested today will equal one dollar one year from now is the present value of that dollar. \*\*\*

The present value of the current market rental payable in the future, which is the fair cash value of the leasehold, can be determined by multiplying the current market rental of a leasehold by the present value of an annual payment of one dollar for the unexpired term of the lease." *American Airlines*, 39 Ill. 2d at 18-19, 233 N.E.2d at 572-73.

There is no dispute in this case that the same estate was being taxed after *American Airlines*. As the plaintiff alleged in its complaint, the tax was not assessed on the defendant's interest in the property but on the plaintiff's leasehold. Although the defendant disputes the prior application of *Corrigan* in valuing leaseholds, it admits that *American Airlines* changed the method for determining the value of a leasehold and that in this case the assessor used the formula from *American Airlines* to calculate the value of the plaintiff's leasehold, as the plaintiff asserts.

■ The question then is whether the change in valuing leaseholds resulted in a tax lawfully assessed on the plaintiff's leasehold on account of the defendant's interest in the property. The plaintiff's interpretation of section 2.6, as alleged in its complaint, is reasonable. The phrase "on account of," which is used in section 2.6, is defined as "for the sake of: by reason of: because of." (Webster's Third New International Dictionary 13 (1986).) In the formula to determine the fair cash value of the leasehold estate under *American Airlines*, the present value of the current market rental of the leasehold to be paid in the future is considered. Although the defendant argues that "*American Airlines* does not require the assessor to calculate the amount of contract rent which the exempt lessor was entitled to receive," this statement is contrary to *American Airlines*, which stated that the fair cash value of a leasehold is "[t]he present value of the current market rental payable in the future." (*American Airlines*, 39 Ill. 2d at 19, 233 N.E.2d at 573.) There is no question that the rent due on a lease, or the reserved rents, is the lessor's interest. (*Paschen*, 9 Ill. 2d 250, 137 N.E.2d 381; *Corrigan*, 144 Ill. 537, 33 N.E. 746.) Because the current market rental of the leasehold, which is the lessor's interest, is part of the formula in determining the value of the leasehold, the plaintiff has sufficiently alleged that it has paid taxes because of or on account of the lessor's interest to trigger a rent reduction under the lease. This is consistent with the definition for "on account of" as used in section 2.6 of the lease. As a result, the plaintiff has pled a good and sufficient cause of action for a rent reduction under the lease. We do not find that the plaintiff's interpretation is the only reasonable one, but we find that because the plaintiff's interpretation is reasonable, it precludes the issue from being decided as a matter of law in the defendant's favor. As a result,

the plaintiff's complaint should not have been dismissed with prejudice.

For the foregoing reasons, the dismissal of the plaintiff's complaint is reversed and the case is remanded for further proceedings.

Reversed and remanded.

CAHILL and THEIS, JJ., concur.