*In re* MARRIAGE OF RICHARD D. NEUMAN, Petitioner-Appellant, and JUDITH A. NEUMAN, Respondent-Appellee.

Fourth District   No. 4—97—0624

Argued January 21, 1998.—Opinion filed March 25, 1998.

COOK, J., dissenting.

John B. Hensley (argued), of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellant.

Curtis A. Anderson (argued), of Anderson & Anderson, of Danville, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner, Richard Neuman, appeals from the denial of his petition to modify support obligations to respondent, Judith Neuman, his ex-wife. The trial court found no substantial change in circumstances had occurred since entry of the judgment of dissolution. Richard contends this finding was against the manifest weight of the evidence. We affirm.

Richard and Judith were married on June 24, 1967. They had one child, Rebecca, born October 9, 1970. At the time of the parties' separation on July 1, 1995, Richard was 48 and Judith was 49 years old. Judith suffered from depressive disorder and somatoform disorder, fibromyalgia, carpal tunnel syndrome and migraine headaches, which prevented her from working a standard eight-hour workday due to limitations on standing, walking, lifting, and carrying. At the time of the parties' separation, she operated a beauty shop in her home where she worked part-time and had a net income of $170 per month. Richard was employed as a millwright and earned $14.35 per hour plus overtime and received occasional "gain share" payments from his company.

Richard filed for dissolution on September 22, 1995. On April 10, 1996, a judgment for dissolution was entered that incorporated a marital settlement agreement previously agreed to by the parties. Pertinent provisions of the agreement included an award of permanent maintenance to Judith in the amount of $225 per week; a requirement Richard pay the $53.52 per week premium payments required to keep Judith covered under the health care provided by his employer through Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (Pub. L. No. 100—647, § 3011(a), 102 Stat. 3616 (codified as amended at 26 U.S.C.A. § 4980B (West Supp. 1997))) coverage; a requirement Richard maintain Judith as beneficiary on two life insurance policies until she started receiving social security retirement benefits; and a requirement that Judith apply for social security disability benefits and advise Richard as to the disposition of her application.

On March 12, 1997, 11 months later, Richard filed a petition to modify alleging a substantial change in circumstances since the entry of the judgment of dissolution. He alleged Judith's expenses had decreased and she received an award of social security disability benefits while his own expenses had increased without a commensurate increase in earnings. He asked the trial court to reduce his obligations to pay maintenance and insurance premiums. Following a hearing on July 8, 1997, the trial court found no substantial change in circumstances had occurred, since the bulk of Richard's

increase in expenses was due to the obligations he owed Judith to which he agreed in the marital settlement agreement. Further, the court found Judith's receipt of social security benefits had been contemplated when the settlement agreement had been entered into as it was specifically mentioned in the agreement. Richard contends the court's findings are erroneous as against the manifest weight of the evidence.

■ Section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(a) (West 1996)) provides the portions of a judgment of dissolution pertaining to maintenance may be modified only upon a showing of a substantial change in circumstances. The Illinois courts have held "substantial change in circumstances" as required by section 510 of the Act means either the needs of the spouse receiving maintenance or the ability of the other spouse to pay maintenance has changed. The party seeking modification of a maintenance order bears the burden of showing the change, and the decision to modify maintenance is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Pedersen*, 237 Ill. App. 3d 952, 956, 605 N.E.2d 629, 632-33 (1992).

■ Richard first contends the trial court erroneously interpreted the judgment of dissolution to preclude consideration of Judith's receipt of social security disability benefits as a substantial change in circumstances. One of the provisions of the marital settlement agreement incorporated into the judgment of dissolution referred to Judith's impending receipt of social security benefits.

> "The record reflects and the parties agree that [Judith] suffers from a number of medical problems, both psychological and physical. The parties have agreed that a duty shall be imposed upon [Judith] to immediately take such steps as may be necessary in order to apply for Social Security Disability. [Judith] shall further be required to advise [Richard] as to any disposition of such application."

In explaining its decision, the trial court stated:

> "[T]he Social Security situation was not only contemplated by the parties at the time of the entry of judgment, but it certainly appears to the court it was taken into account in arriving at the number that they did.
>
> ***
>
> The only other mention is that she is obliged to apply and to do that as quickly as she could and to keep everybody posted on the progress of it. The only conclusion that the court can come to is that they figured that she was going to qualify for Social Security Disability benefits, would do so quickly, and that that was part of the basis of the bargaining in the amounts that were ordered."

Changed circumstances justifying modification of maintenance must occur after the time of the award. *Pedersen*, 237 Ill. App. 3d at 957, 605 N.E.2d at 633; *In re Marriage of Zeman*, 198 Ill. App. 3d 722, 733, 556 N.E.2d 767, 773 (1990). We do not believe the trial court concluded it was *precluded* from considering the receipt of social security benefits. Instead, the trial court permitted the parties to engage in a full evidentiary hearing and to offer evidence on that issue. Because the receipt of benefits by Judith was contemplated in the marital settlement agreement, their actual receipt was then interpreted by the trial court as not constituting a change in circumstances.

Richard argues this interpretation is incorrect because the parties did not know the amount of the benefits Judith would receive and there must be a reason she was obligated to apply for the benefits and inform Richard of the results of her application. Because the parties did not know the amount of benefits at the time they agreed to the maintenance amounts, Richard argues the benefits could not have been taken into account when setting those amounts and their receipt would then be a change in circumstances. However, if the parties had meant for a change in Richard's maintenance obligations upon receipt of benefits, they could have so stated. For example, they could have agreed for every dollar of benefits received Richard's obligations would be reduced by a set amount. They did not do this.

Richard argues it only makes sense to allow him to reduce his maintenance obligations upon Judith's receipt of benefits because she was obligated to inform him when she received those benefits. He contends there is no reason for requiring her to keep him informed other than to allow him to seek a reduction in his obligations toward her. Richard contends the opposing possibility, that Judith was required to inform him of the benefits received so she might seek an increase in maintenance from him, is absurd due to his already generous commitment to pay Judith (or on her behalf) 65.4% of his monthly net income.

Richard's implication he would not have agreed to what he contends is an outrageously high obligation on his part unless he could get the obligation reduced upon Judith's receipt of benefits is not supported by any evidence. An equally plausible explanation is Richard agreed to the amounts of his maintenance and related obligations in order to reach a marital settlement agreement and obtain a dissolution that he wanted.

No evidence was introduced by either party as to the reason Judith was required to keep Richard informed of her receipt of benefits. It would be speculation on the part of the trial court to assume a rea-

son and it is not necessary to support the court's judgment. The parties agreed to a specific amount of maintenance *knowing additional benefits* of some sort would likely be coming to Judith. If the parties desired the amount of maintenance to be tied to the amount of benefits received, they could have so agreed.

Richard contends a substantial change in circumstances has occurred in any event. In addition to the disability benefits of $398 per month that Judith receives, she received $4,967 in retroactive benefits. Richard argues a comparison of Judith's financial affidavits from the time of the dissolution to the time of the hearing on the petition to modify show a decrease in living expenses of approximately $120 per month. However, Judith's more recent affidavit also reveals even with receipt of the monthly disability benefits, she would barely break even each month. Her net income from her beauty shop had risen to only $215 per month.

Richard also contends his financial circumstances have changed since the judgment of dissolution because he pays $1,230.82 of his $1,889.44 net monthly income either to Judith directly or for her benefit. This income does not include a raise he received to $15 per hour and was also based on a 40-hour week. He usually had overtime in the neighborhood of 2 hours per day for a 50-hour week. It also did not include the "gain share," which was the result of sharing company profits with employees. This amounted to $40 to $80 per week. While Richard claimed he could no longer afford to rent the small house where he lived at the time of the dissolution and was forced to move into his sister's home, he also testified he bought new lawn mowing/snowplowing equipment for $2,000. His income totals on his affidavit did not reflect much income from lawn mowing or snow removal.

Richard knew his expenses and income at the time he entered into the marital settlement agreement with Judith. There has been no substantial change in circumstances since the judgment of dissolution. He is not entitled to a modification of his obligations to Judith.

Richard's final argument is Judith has done nothing to enhance her earning capacity and he contends she should be required to do so or he is entitled to a reduction in his maintenance obligation. The maintenance awarded to Judith was not rehabilitative maintenance as both parties agree her physical and mental problems precluded her from most gainful employment. Further, after almost 30 years of marriage and no meaningful employment in the workforce during that time, Judith's job skills were outdated. There was little realistic chance Judith would ever find more lucrative employment than she already had with her home beauty shop. Judith testified she applied

for one or two jobs after the dissolution but did not get them or did not take them because they paid too little. This uncontradicted evidence suggests her lack of employability and not a lack of good-faith efforts to achieve financial independence.

Richard also notes Judith inherited $30,000 from her parents shortly after the dissolution but instead of using it to support herself, she gave all but $4,000 to the parties' daughter, Rebecca, a college-educated adult capable of supporting herself. Judith gave the money to Rebecca to further her education. Rebecca had a degree in education but was then only working as a substitute teacher.

Richard knew Judith would be receiving an inheritance because she disclosed it on her financial affidavit at the time of the dissolution. He did not know how much the inheritance would be yet he agreed to the provisions of the marital settlement agreement. While we may believe it would have been preferable for Judith to enhance her own economic security with the inheritance, the gift to the parties' daughter did not cause a substantial change in circumstance.

Richard has not demonstrated a substantial change in circumstance in either his income and expenses or those of Judith from the time of the entry of the judgment of dissolution. All he has demonstrated is his unhappiness with the bargain he made in the marital settlement agreement. The factors he alleges are new were known to him at the time of the agreement, and the trial court properly concluded the contemplated award of social security benefits was taken into account by the parties in negotiating the marital settlement agreement.

The judgment of the circuit court is affirmed.

Affirmed.

GARMAN, P.J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent. I would reverse and remand the decision of the trial court with instructions to modify the maintenance order. The April 1996 agreed maintenance order of $225 per week did not take into account Judith's social security disability award, an award for which she had not even applied when the agreed $225-per-week order was entered.

The majority opinion adopts a new rule, that what is important in an agreement is what the parties contemplated, or could have contemplated, not what they said. It is not the function of the courts to carry out the intention of the parties regardless of whether the

instrument contains language sufficient to express it. 17A Am. Jur. 2d *Contracts* § 352 (1991). The intention or understanding of the parties must be determined not from what the parties thought but from the language of the contract itself. *Saddler v. National Bank*, 403 Ill. 218, 228, 85 N.E.2d 733, 740 (1949); *Monroe Dearborn Ltd. Partnership v. Board of Education*, 271 Ill. App. 3d 457, 462, 648 N.E.2d 1055, 1058 (1995) (court should give effect to parties' intent as evidenced by language used in contract).

The majority opinion states that if the parties intended that maintenance be modified when social security benefits were received, they could have so agreed. It is also true that if the parties intended that the amount of maintenance *not* be modified when social security benefits were received, they could have included that language in their agreement. The majority's analysis allows a court, in hindsight, to rule whichever way it wants, by selecting a party to criticize for the lack of additional language in the contract. If parties are to be bound not just by what they said, but by what they could have said, where will we draw the line? Will we say that surely the parties contemplated that the payor would be receiving pay increases since he had been receiving regular pay increases in the past? Will we say that surely the parties contemplated that the recipient's expenses would be increasing since inflation has been a fact of life for many years? Under the majority's analysis, a court may now choose not to modify maintenance in almost every case where the parties have entered into an agreement.

Even if we accept the majority's argument that specific language is necessary before future social security benefits can justify maintenance, such language was present in this case. The marital settlement agreement contains section 1, entitled "Maintenance." Under that section there is subsection 1—d, entitled "Social Security Disability Application," which imposes on Judith a duty to apply for social security disability and to advise Richard of the disposition of such application. The majority's suggestion that it would be speculation for us to assume why this language is present in the agreement is simply a refusal to consider the language of the contract, the most legitimate source for determining the parties' intent. The majority does not point to any contract language to support its argument that an award of social security benefits cannot be a basis for modification.

In the absence of language in the agreement stating whether future changes in income or expenses may be considered in modifying a maintenance order, those changes should be considered. It would be exceptional for the existing order to have taken those changes into

account. A basic principle in setting support, either child support or maintenance, is that the amount of support should be based on current conditions. When changes then occur, child support or maintenance can be modified. *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 819, 597 N.E.2d 847, 857 (1992) (should not consider mere possibility of future resources); *In re Marriage of Moore*, 117 Ill. App. 3d 206, 208, 453 N.E.2d 102, 104 (1983) (should not consider possibility or likelihood of future income increases). In fact, evidence of future social security benefits has been excluded in setting maintenance, as the trial court is generally required to consider the parties' economic circumstances as they exist at the time of the maintenance determination. *In re Marriage of Zeman*, 198 Ill. App. 3d 722, 736, 556 N.E.2d 767, 775 (1990).

The Act is geared toward a present ability to pay support and does not suggest in its terms that possible future financial resources of a party may also be taken into account. *Coons v. Wilder*, 93 Ill. App. 3d 127, 134, 416 N.E.2d 785, 792 (1981).

> "In ordering the payment of child support, a circuit court must consider the needs of the child, the separate income of the wife, and the income of the husband. [Citations.] Because changes in these facts cannot be anticipated with accuracy, a circuit court should ordinarily not try to anticipate such changes by making its award of child support to increase automatically with the child's age." *McManus v. McManus*, 38 Ill. App. 3d 645, 647, 348 N.E.2d 507, 509 (1976).

If a payor's net income of $500 per week would justify support of $100 per week, what sense does it make to order $120 per week, on the expectation that the payor will be earning $600 a year later? If the trial court does order $120 per week, there will be an overpayment of support until the increase in net income occurs. It would be possible to set child support or maintenance at a percentage of net income, but percentages are generally disfavored. See *In re Marriage of Florence*, 260 Ill. App. 3d 116, 120, 632 N.E.2d 681, 684 (1994); *In re Marriage of Waldschmidt*, 241 Ill. App. 3d 7, 12-13, 608 N.E.2d 1299, 1303 (1993); see also 1 H. Gitlin, Gitlin on Divorce § 15—17, at 679-81 (2d ed. 1997) (suggesting that while the parties can agree to automatic increases in the maintenance level, the court in the absence of agreement should not provide for automatic increases).

The fact that the present agreement did not provide any type of adjustment in the event Judith began receiving social security indicates that the receipt of social security benefits was intended to be a basis for modification. In the present case, the maintenance of $225 per week was either too little before Judith began receiving social security or was too much after she began receiving it.

Courts are sometimes frustrated when parties return to court shortly after signing a settlement agreement. See *In re Marriage of Uphoff*, 80 Ill. App. 3d 145, 147, 398 N.E.2d 1243, 1245 (1980) (where the ex-husband agreed to a child support order knowing full well that two days later his salary would end by virtue of a voluntary agreement he had entered into with his employer). In *Uphoff*, modification was denied because of the ex-husband's bad faith. No such circumstances are present in this case. See *In re Marriage of Lavelle*, 206 Ill. App. 3d 607, 613, 565 N.E.2d 291, 295 (1990) (respondent agreed to order well before his business entered bankruptcy).